IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :      CRIMINAL ACTION
                              :
        v.                    :
                              :
STEVEN ALLEN SCHWARTZ         :      NO. 04-231

MEMORANDUM

Bartle, J.                                        May 15, 2012

Before the court is the motion of defendant Steven Schwartz ("Schwartz") to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.

Schwartz was convicted by a jury on November 18, 2004 of two counts of bank fraud in violation of 18 U.S.C. § 1344 and seven counts of wire fraud in violation of 18 U.S.C. § 1343.  He was sentenced to eighteen months' imprisonment and a term of supervised release of five years on May 18, 2005.  His conviction and sentence were affirmed on appeal.  See United States v. Schwartz, 315 F. App'x 412 (3d Cir. 2009).

Schwartz subsequently filed a pro se § 2255 petition in which he alleges a deprivation of his Sixth Amendment right to effective assistance of counsel through various errors made at the trial and on appeal.  Schwartz also submits in his petition that the government engaged in outrageous misconduct throughout this action and that he is actually innocent.  He requests that we hold an evidentiary hearing as to his claims.

I.

In January, 2003, Schwartz was indicted for conspiracy to commit bank fraud, wire fraud and identity theft, and wire fraud, bank fraud, identity theft, and use of a fictitious name for mailing, in violation of 18 U.S.C. §§ 371, 1028(a)(7), 1342, 1343, and 1344.  These charges stemmed from a Ponzi scheme Schwartz operated from 1997 to 2002.  See United States v. Schwartz, No. 03-35 (E.D. Pa. Jan. 16, 2003) (the "03-35 action").  The case was assigned to Judge Stewart Dalzell.  While on pretrial release, the government discovered that Schwartz had engaged in further potentially-criminal behavior and moved for pretrial detention.

At the detention hearing before Judge Dalzell, the government presented evidence that Schwartz made online payments to credit card companies from bank accounts with insufficient funds.  These payments increased Schwartz's available credit line.  He then incurred new charges on the credit cards before the payments were rejected.  Schwartz testified that he had not intended to defraud the credit card companies.  Instead, Schwartz asserted that he had believed he would have sufficient funds to cover the online payments based on an anticipated $9,000 loan from a Mr. William Catanese and a company called Great American Mortgage.  He also expected to receive money from the refinancing of his mother's home.  After the hearing, Judge Dalzell found that there was probable cause to believe Schwartz had engaged in criminal activity while on supervised release and therefore a

-2-

rebuttable presumption arose under the Bail Reform Act that no condition or combinations of conditions could prevent further harm to the community.  See 18 U.S.C. § 3148(b).  Based on this finding, Judge Dalzell granted the government's motion and revoked Schwartz's bail.

On April 22, 2004, a grand jury returned an indictment in this second case charging Schwartz with two counts of bank fraud, in violation of 18 U.S.C. § 1344.  See United States v. Schwartz, No. 04-231 (E.D. Pa. Apr. 22, 2004) (the "04-231 action").  On June 3, 2004, the grand jury returned a superseding indictment charging Schwartz with an additional seven counts of wire fraud in violation of 18 U.S.C. § 1343.  The prosecution stemming from the indictment in the 04-231 action was assigned to the undersigned.

Mark Cedrone, Esquire, who represented Schwartz in the 03-35 matter in front of Judge Dalzell, was appointed to represent Schwartz in connection with the 04-231 action.  However, on June 25, 2004, Cedrone moved to withdraw.  According to Cedrone, Schwartz was dissatisfied with Cedrone's failure to interview witnesses.  Additionally, Schwartz believed that Cedrone had encouraged a woman to whom Schwartz owed money, Michelle Poll, to go to the Federal Bureau of Investigation to make a complaint against Schwartz and therefore that Cedrone was "the reason" Schwartz was in custody.  On July 9, 2004, the undersigned granted the motion to withdraw and appointed Mark S. Greenberg, Esquire to represent Schwartz.

-3-

Before trial, the government moved to consolidate this prosecution with the 03-35 action pending before Judge Dalzell. Judge Dalzell found that allowing the actions to proceed independently would serve the interests of justice because the 04-231 action was a "straightforward, temporally limited" case while the 03-35 action involved "far more complicated charges." Judge Dalzell also found that consolidation could prejudice Schwartz's mother, Ilene Schwartz, who was indicted as a co-defendant in the 03-35 action.

The government also filed a motion in limine under Rule 404(b) of the Federal Rules of Evidence.  In this motion, the government put forth evidence that Schwartz had a prior conviction for bank fraud.  See United States v. Schwartz, 899 F.2d 243 (3d Cir. 1990).  The government also sought to introduce evidence that Schwartz had engaged in check kiting in the 03-35 action similar to the acts charged in the 04-231 action.  The undersigned declined to rule on the motion before trial.

On November 17, 2004, Schwartz proceeded to trial on the indictment in the 04-231 action.  Charles Becker, Assistant Vice President of the Financial Crime Division of Citizens Bank, testified that Citizens Bank was insured by the Federal Deposit Insurance Corporation ("FDIC") and authenticated Schwartz's bank records.  Becker testified that on June 6, 2003 Schwartz made online payments as follows:  (1) $4,349.59 to Capital One; (2) $3,664.15 to a credit card issued by Providian National Bank ("Providian"); (3) $440 to Capital One; and (4) $380 to Capital

-4-

One.  These payments did not clear Schwartz's Citizen Bank account due to insufficient funds and were returned on June 9, 2003.  Becker also stated that on July 3, 2003 Schwartz made an online payment of $2,250 to Capital One which was returned several days later for insufficient funds.  Finally, Becker testified that in March, 2004, Schwartz made a $1,000 payment to PrePaid ATM and a $500 payment to PrePaid ATM which were likewise returned for insufficient funds.

John Fletcher, Department Manager of Fraud for Providian, also testified.  He stated that Providian was currently insured by the FDIC.  Fletcher noted that on June 5, 2003, Schwartz made an online payment to his Providian account in the amount of $3,364.15.  This payment brought Schwartz's account, which had a total credit line of $3,676, to a balance of approximately $0.  Schwartz then incurred additional charges on the account from June 7-10, 2003.  After these charges were made, the payment was returned for insufficient funds.

Cecelie Garcia, a Process Manager for Capital One, next appeared as a witness for the government.  She testified that Capital One was insured by the FDIC and authenticated Schwartz's account statements for a Platinum Mastercard, a Platinum Visa, and a Mastercard issued by Capital One.  Garcia stated that Schwartz made online payments of $440 and $2,250 to his Platinum Mastercard which were both returned for insufficient funds.  Garcia added that Schwartz made an online payment of $4,439.59 to his Mastercard on June 5, 2003 which was again returned for

-5-

insufficient funds several days later.  Finally, Garcia told the jury that Schwartz made an online payment of $380 from his PrePaid ATM account to his Platinum Visa which was also returned for insufficient funds.

The government then called Alan Goodman, a retired attorney who purchased the home of Schwartz's mother.  Goodman testified that Schwartz's mother received $94,826.25 from the sale.

Alan Ross, owner of PrePaid ATM, took the stand.  Ross explained that PrePaid ATM was a debit card company.  Through a service called "Instant ACH," the company offered instant credit for deposits after a customer had maintained an account for more than thirty days.  Ross testified that he had prior convictions for bankruptcy fraud and for violating the Wire Act, "for accepting bets as a U.S. citizen."

According to Ross, Schwartz made transfers on February 23 and March 4, 5, and 7, 2003 from his Citizens bank account to his PrePaid ATM account which he utilized almost immediately.  At the time of those transfers, Schwartz had insufficient funds in his Citizens Bank account.  However, Schwartz later repaid PrePaid ATM with deposits made from I Commerce, an internet gambling company.

Schwartz then deposited $1,000 into his PrePaid ATM account on March 11, 2003 and withdrew that money three minutes later.  Schwartz made another deposit of $1,000 on March 12, 2004, which he withdrew two minutes later.  The next day,

-6-

Schwartz made another deposit of $500 and transferred the money out of his account eight minutes later.  However, none of these deposits cleared.  Ross testified that Schwartz was notified that his checks to PrePaid ATM had bounced but that Schwartz never responded.  Later, Schwartz's mother contacted Ross and repaid the full amount due, $2,500 plus fees, on March 29, 2004. Finally, on behalf of the government, FBI Special Agent Barbara Verica presented a spreadsheet summarizing Schwartz's accounts with Citizens Bank, Providian, Capital One, and PrePaid ATM.

The defense presented evidence that the victim credit card companies had all been repaid and that Schwartz remained their customer.  Defense counsel brought out on cross-examination that the banks and credit card companies had benefitted from fees charged to Schwartz for returned checks, overdrafts, past-due payments, and for going above his credit limit.

Ultimately, the jury returned a verdict of guilty on all nine counts.  Schwartz moved to discharge his counsel.  The court granted the request and allowed Schwartz to proceed pro se. The court then gave the jury a supplemental special interrogatory which asked whether Schwartz had utilized "sophisticated means" and whether he had intended any amount of loss.[1]  The jury found

---

1.  The court submitted the supplemental special interrogatory pursuant to agreement of the parties and the Supreme Court's decision in Blakely v. Washington, 542 U.S. 296, 301-03 (2004). It is now clear that this special interrogatory is not necessary in light of United States v. Booker, 543 U.S. 220 (2005).

that Schwartz had not utilized sophisticated means and had not intended any loss.

Schwartz subsequently filed a post-verdict motion for acquittal and a new trial.  Cedrone, original counsel for Schwartz, was again appointed to represent Schwartz for purposes of post-verdict motions, sentencing, and appeal.  On April 11, 2005, this court denied Schwartz's post-trial motions and sentenced Schwartz to eighteen months' imprisonment.

Meanwhile in the 03-35 action before Judge Dalzell, Schwartz was convicted on 15 of the 27 counts of the indictment on April 22, 2005 after a 15-day trial.  He was sentenced on July 26, 2005 to 225 months' imprisonment to be served consecutively with the sentence imposed in the 04-231 action.[2]

On appeal in the 04-231 action, Schwartz asserted that the jury had returned inconsistent verdicts.  He also challenged the sufficiency of the evidence and asserted that the government had improperly utilized immunized testimony.  Additionally, Schwartz filed a pro se supplemental brief which raised a myriad of claims.[3]  On March 4, 2009, the Court of Appeals affirmed this court's judgment and found that the arguments raised in

---

2.  Although Schwartz has completed the term of eighteen months' imprisonment imposed in the 04-231 action, the Supreme Court has instructed that a defendant serving consecutive sentences remains "in custody" until all are served and may attack the earlier conviction even if that particular sentence has already expired. See Garlotte v. Fordice, 515 U.S. 39, 41 (1995).

3.  Schwartz's appeal in this matter was consolidated with his appeal in the 03-35 action.

Schwartz's pro se supplemental brief were meritless.  Schwartz's
petition for a writ of certiorari was denied by the Supreme Court
on April 26, 2010.  This timely § 2255 petition followed.

                              III.

          As stated above, Schwartz alleges ineffective
assistance of counsel under the standard set forth in Strickland
v. Washington.  466 U.S. 668 (1984).  Specifically, he asserts
that counsel:  (1) failed to interview witnesses and to conduct a
proper investigation; (2) neglected to develop a defense
strategy; (3) failed to move to dismiss the indictment and
disqualify the prosecution; (4) failed to submit jury
instructions and jury interrogatories and to object to erroneous
instructions; (5) failed to research the law; (6) violated
attorney-client privilege; (7) coerced him not to testify; (8)
made unreasonable trial errors; (9) committed various errors in
connection with sentencing; and (10) "omitted significant and
obvious issues while pursuing issues that were clearly and
significantly weaker" on appeal.

          Under the Strickland standard, Schwartz bears the
burden of proving that:  (1) counsel's performance was deficient;
and (2) he suffered prejudice as a result.  Id.  The first
element requires that "[counsel's] performance was, under all the
circumstances, unreasonable under prevailing professional norms."
United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  Our
scrutiny of counsel's performance is highly deferential.  We
presume that counsel's actions were undertaken in accordance with

                              -9-

professional standards and as part of a "sound trial strategy."
Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350
U.S. 91, 101 (1955)).

To satisfy the prejudice element, Schwartz must show
"there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different." Id. at 694.  A "reasonable probability" is one
that is "sufficient to undermine confidence in the outcome." Id.
When ruling on a § 2255 petition, the court may address the
prejudice prong first "and reject an ineffectiveness claim solely
on the ground that the defendant was not prejudiced." Rolan v.
Vaughn, 445 F.3d 671, 678 (3d Cir. 2006).

We will begin with Schwartz's contention that counsel
failed to conduct a sufficient investigation and to interview
eight witnesses:  (1) his mother Ilene Schwartz; (2) Judge
Dalzell's courtroom deputy, Eileen Adler; (3) Alan Goodman; (4)
Allen Ross; (5) Providian employee Fletcher; (6) Capital One
employee Garcia; (7) Jennie Artzt; and (8) Norman Tarnoff.

The decision as to which witnesses to interview and
call to testify is strategic and thus counsel is entitled to a
high level of deference. E.g., Diggs v. Owens, 833 F.2d 439, 446
(3d Cir. 1987).  Trial counsel need not interview every witness
suggested by the defendant.  Lewis v. Mazurkiewicz, 915 F.2d 106,
113 (3d Cir. 1990).

At the start of trial, Schwartz raised these very same
concerns.  His counsel explained to the court on the record:

-10-

> I have had the investigator interview
> witnesses as Mr. Schwartz has requested and
> other witnesses have not been interviewed,
> primarily, because I have statements of
> theirs, that they have been giving to the
> Government.... And also, frankly, I wouldn't
> call those witnesses in my case in chief.
> With respect to listening to Mr. Schwartz, I
> have met with Mr. Schwartz on at least four
> or five occasions.... And we have gone into
> detail about the defenses and how the case
> should be approached. I have a strategy
> involved here as--as to how I think the case
> should be approached and I, frankly, think
> that it's a winning strategy.... But I can
> tell the Court that I have interviewed
> witnesses. I have conducted an
> investigation. I have researched the issues.
> And I have done everything I can to
> effectuate my--my role as--counsel for Mr.
> Schwartz.

Schwartz's contentions do not rise to the level of constitutional deficiency as set forth in <u>Strickland</u>. Counsel did interview Allen Ross. Four of these witnesses, Goodman, Ross, Fletcher, and Garcia, testified at trial for the government and were effectively cross-examined.

According to Schwartz, Ilene Schwartz, Artzt, and Tarnoff would have provided exculpatory evidence regarding his "good faith" defenses, namely that Schwartz was prevented from depositing a check to cover his online payments because of a "death threat" from Tarnoff. Schwartz submits that his mother Ilene Schwartz also would have testified that his former attorney Mark Cedrone advised him that it was legal to "play the float."

Contrary to Schwartz's arguments, his counsel had valid reasons not to interview/and or call these witnesses. As his mother and co-defendant in the 03-35 action, Ilene Schwartz

-11-

likely would not have been considered by the jury to be a credible witness.  His counsel wished to avoid use of Schwartz's "good faith" defenses because they could open the door to damaging evidence of Schwartz's past conviction for bank fraud and the introduction of similar acts under Rule 404(b) of the Federal Rules of Evidence as a result of his pending indictment in the 03-35 action.

The record shows that his counsel's trial strategy was to seek to establish that Schwartz engaged in ordinary, non-criminal banking transactions, that he had not intended to defraud or harm the victim financial institutions, and that he had ultimately repaid the lost funds.  This was a reasonable trial strategy and is consistent with many of the same arguments Schwartz advances in the instant § 2255 petition.  Counsel cannot be faulted merely because this strategy ultimately did not result in a verdict in Schwartz's favor.

For similar reasons, Schwartz's claims of improper investigation and failure to create a proper defense strategy also fail.  Counsel did in fact hire an investigator and move for permission to expend up to $1,000 on his investigation.  The funds available for investigation under the Criminal Justice Act are not unlimited.  See 18 U.S.C. § 3006A(e)(3).  As discussed above, counsel's decision not to pursue Schwartz's "good faith" defenses was strategic and reasonable in light of Schwartz's prior bank fraud conviction.  Accordingly, counsel did not

provide ineffective assistance in the investigation of Schwartz's case and creation of a defense strategy.

We turn next to Schwartz's claim that his counsel was ineffective for failing to move for dismissal of the indictment and for disqualification of the prosecution.  Schwartz argues that the government violated the Fifth Amendment to the United States Constitution by using information obtained after being exposed to immunized testimony given by Schwartz at his bail revocation hearing before Judge Dalzell on March 25, 2004.

Under United States v. Perry, a judicial grant of use-fruits immunity may be available to a defendant who testifies at a bail revocation hearing.  788 F.2d 100, 115-16 (3d Cir. 1986). This is because:

> [T]he presumption of dangerousness [under the
> Bail Reform Act], if unrebutted by evidence
> offered by the defendant, places the
> defendant in the position of risking
> self-incrimination by testifying as to his
> future intentions, or running the grave civil
> disability of preventive detention.

Id. at 115.  Thus, testimony by a defendant at a bail revocation hearing without a grant of immunity would "pose[] a serious issue of unconstitutionality under the fifth amendment privilege against self-incrimination."  Id.

As discussed above, Schwartz testified at the bail revocation hearing that he had expected a loan from a Mr. William Catanese and funds from the refinancing of his mother's home to cover some of the online payments at issue in this action.  The government has conceded that, upon hearing this testimony, it

-13-

proceeded to investigate this information and present it to a grand jury pursuant to its policy to disclose to the grand jury substantial evidence of which the prosecutor is personally aware that may directly negate the guilt of an investigation target.

Schwartz raised this issue both in his post-trial motion for a judgment of acquittal and on appeal.  Our Court of Appeals concluded that even assuming the government somehow misused Schwartz's immunized testimony, such misuse was harmless.  See Schwartz, No. 05-2770, slip op. at *17.  The court stated:

> Schwartz's bail-hearing testimony tended to
> exculpate him--not inculpate him--by
> suggesting that he lacked the intent to
> defraud at the time he made the withdrawals.
> And that Schwartz's mother did indeed sell
> her home is not relevant to any of the
> elements of any of the fraud charges on which
> the grand jury ultimately indicted him.

Id. at *17-18 n.5.  We agree with this analysis.  Counsel was not ineffective for failing to move to dismiss the indictment and disqualify the prosecution team for this reason.

Schwartz also asserts that his counsel should have moved to dismiss the indictment because the prosecution engaged in "outrageous misconduct" before the grand jury by presenting perjured testimony to the grand jury.  According to Schwartz, FBI agent Verica testified in front of the grand jury that Schwartz was expecting the $9,000 loan from William Catanese by wire when instead Schwartz expected the loan in the form of the check.  This argument is totally without merit.  The discrepancy between the statements of Schwartz and Verica is trivial at best and

likely the result of an honest mistake, which does not rise to
the level of perjury.  See, e.g., United States v. Rose, 215 F.2d
617, 623 (3d Cir. 1954).  Furthermore, as discussed above, this
testimony was largely exculpatory and therefore Schwartz cannot
demonstrate he was prejudiced by counsel's failure to move to
dismiss the indictment on this ground.  In fact, Schwartz raised
this argument in a pro se motion to dismiss the indictment which
the court orally denied before the start of the trial.

        We turn next to Schwartz's claim that counsel was
ineffective for failing to submit jury interrogatories and jury
instructions and to object to erroneous instructions.
Specifically, Schwartz maintains that Greenberg should have
requested several instructions, including that:  (1) Schwartz
must have intended to cause some deprivation or loss to the
alleged victim's property rights under McNally v. United States,
483 U.S. 350 (1987); (2) intent to defraud requires more than
merely an intent to deceive the bank in order to obtain money
from it under United States v. Thomas, 315 F.3d 190 (3d Cir.
2002); (3) the government must show Schwartz contemplated some
actual harm or injury as it relates to wire and bank fraud
according to United States v. Russo, 166 F. App'x 654 (3d Cir.
2006); (4) Schwartz must have made a fraudulent misrepresentation
or omission reasonably calculated to deceive persons of ordinary
prudence and comprehension under United States v. Pearlstein, 576
F.2d 531, 535 (3d Cir. 1978); (5) the crime of bank fraud entails
a materiality requirement according to Neder v. United States,

-15-

527 U.S. 1 (1999); (6) "a check is not a representation the money
is there" according to <u>Williams v. United States</u>, 458 U.S. 279
(1982); (7) Schwartz could be found guilty of fraud based on a
failure to disclose material information only if he had a duty to
speak under <u>Chiarella v. United States</u>, 445 U.S. 222 (1980); and
(8) some unspecified instruction as outlined in <u>Skilling v.
United States</u>, 130 S. Ct. 2896 (2010).

     This court gave the following instructions:

> In order to sustain its burden of proof for
> the crime of bank fraud, the government must
> prove the following three (3) elements beyond
> a reasonable doubt for each count:  (1) the
> defendant executed or attempted to execute a
> scheme to defraud Providian Bank in Count One
> of the indictment and Capital One Bank in
> Count Two, or to obtain money by means of
> false or fraudulent pretenses,
> representations, or promises from those
> institutions; (2) he did so knowingly and
> with intent to defraud; and (3) Providian
> Bank and Capital One Bank were federally
> insured at the time of the offense.
>
> ....
>
> In order to sustain its burden of proof for
> the crime of wire fraud, the government must
> prove the following three (3) elements beyond
> a reasonable doubt for each count:  (1) the
> defendant knowingly devised a scheme to
> defraud or to obtain money or property by
> materially false or fraudulent pretenses,
> representations, or promises; (2) he did so
> with the intent to defraud; and (3) in
> advancing or furthering or carrying out this
> scheme, he used or caused to be used a wire
> communication in interstate commerce.

     As further explanation of the elements, the court
instructed:  "A scheme to defraud or to obtain money, is any
deliberate plan of action or course of conduct by which someone

intends to deceive or to cheat another or by which someone
intends to deprive another of something of value."  We also
charged:  "It is not necessary for the government to prove that
the defendant was actually successful in defrauding anyone or was
successful in obtaining money by means of false or fraudulent
pretenses, representat[ions] or promises.  Thus, it is the
scheme, itself, which is unlawful, not the result."

> As to intent, we explained to the jury:

> To act with an intent to defraud means to act
> knowingly and with the intention or the
> purpose to deceive or to cheat.  A person
> acts knowingly when he is aware of what he is
> doing and is not acting due to some accident
> or mistake.  An intent to defraud generally
> is accompanied by a desire or purpose to
> bring about some gain or benefit to oneself
> or another person or by a desire or a purpose
> to cause some loss to some person.

We further instructed that:

> Honest mistakes in judgment or errors in
> management do not rise to the level of intent
> to defraud.  However, good faith does not
> mean the hope that eventually, a scheme will
> come out "even" or the hope that the money,
> which is taken by a scheme will eventually be
> paid back.  Similarly, the fact that the
> money obtained through a scheme to defraud
> may have been used for legitimate purposes or
> to pay business expenses, is not a defense.

> These instructions were consistent with the law at the

time as it relates to wire and bank fraud.  Schwartz's list of
jury instructions that his counsel allegedly should have offered
either rely on misstatements of law or on cases which are
inapplicable to the charges against him.  In its opinion
affirming his earlier conviction for bank fraud, our Court of

Appeals instructed that "a person may commit a bank fraud without making false or fraudulent pretenses, representations or promises, as this is the 'plain meaning' of the statute." Schwartz, 899 F.2d at 246.  Thus, Schwartz did not have to make a false statement in order to be convicted under the bank and wire fraud statutes.  Id.; see also United States v. Jimenez, 513 F.3d 62, 75-76 (3d Cir. 2008).

Williams, on which Schwartz relies, is inapplicable. That case dealt with whether a check can constitute a "false statement" with regards to 18 U.S.C. § 1014, which makes it a crime to "knowingly mak[e] any false statement or report," or "willfully overvalu[e] any land, property or security."  458 U.S. at 279.  It did not address the bank and wire fraud statutes and therefore counsel was not ineffective for failing to request an instruction based on it.

Similarly, Schwartz's reliance on Thomas is misplaced. In Thomas, the defendant, who was employed as a home health care aide to an elderly individual, wrote several checks belonging to the elderly individual and pocketed the funds for her own benefit instead of using them for the elderly individual's expenses.  315 F.3d at 194.  Because the record indicated that there was no loss to the banks, let alone any intent to cause such a loss, the Court of Appeals reversed the defendant's conviction for bank fraud.  Id. at 202.  In a later case distinguishing Thomas, our Court of Appeals stated that "where the bank is the 'target of the deception,' it makes no difference whether the perpetrator

-18-

had an intent to harm the bank." <u>United States v. Leahy</u>, 445
F.3d 634, 642-43 (3d Cir. 2006).  Therefore, an instruction that
"the intent element of bank fraud is an intent to deceive the
bank in order to obtain from it money or other property" was
upheld as appropriate.  <u>Id.</u> at 647.

Schwartz's claim that his counsel should have requested
an instruction that the fraud had to be reasonably calculated to
deceive persons of "ordinary prudence and comprehension" also
fails.  In its charge, this court instructed:

> The government does not have to prove that
> the alleged victims of the scheme to defraud
> knew that they were being defrauded.  It is
> not a defense that the alleged victims ...
> may have acted gullibly, carelessly, naively
> or negligent[ly], which led to their being
> defrauded.  The alleged victims' negligence
> is ... not a defense--to a criminal conduct.

This instruction accurately reflects the general rule that "[t]he
negligence of the victim in failing to discover a fraudulent
scheme is not a defense to criminal conduct." <u>United States v.
Coyle</u>, 63 F.3d 1239, 1244 (3d Cir. 1995).  The remainder of the
jury instructions offered by Schwartz in his petition either was
in fact addressed by the court in its charge or is simply
incorrect.

In this section of his petition, Schwartz also states
that counsel was ineffective for failing to have the charge
conference transcribed and for failing to have Schwartz attend
the conference.  However, Rule 43(b) of the Federal Rules of
Criminal Procedure provides that a defendant has no right to be

present at a proceeding which "involves only a conference or hearing on a question of law."  Additionally, there is no requirement that a charge conference held in chambers be transcribed.  Instead, this is left to the discretion of the court.  28 U.S.C. § 753(b); see also In re Beard, 811 F.2d 818, 833 (4th Cir. 1987); United States v. Jenkins, 442 F.2d 429, 438 (5th Cir. 1971).

Schwartz also asserts that counsel was ineffective for failing to request voir dire to determine whether the jury had animus towards gambling activity or towards Schwartz because of his prior conviction.  The record shows that the court asked the jury panel during voir dire whether they knew of Schwartz.  No jurors responded that they knew of him, and therefore they could not have known of his prior conviction.  Because gambling activity was largely not at issue at trial, counsel cannot be found ineffective for failing to request voir dire on this subject.

Schwartz further claims that counsel provided ineffective assistance and violated his Fifth Amendment rights by coercing him not to testify.  His contention is frivolous in light of the record.  Immediately before trial, the court conducted the following colloquy:

> The Court:  Are you aware that you have a constitutional right not to testify at this criminal trial?
>
> Schwartz:  I do, your Honor.

The Court:  And that the jury will not be permitted to draw any inference against you, if you do not testify?

Schwartz:  I'm--that's what I understand is supposed to happen, your Honor.

The Court:  Yes.

The Court:  Do you also understand that you have a constitutional right to testify, if you want to do that?

Schwartz:  Yes, your Honor.

The Court:  Do you understand that the decision whether or not to testify is your decision?

Schwartz:  I understand that it's--that it's my decision, however, that could be affected based on the strategy that--that defense counsel takes.

The Court:  I understand.  And you have a--a very able lawyer, actually, a well-known member of the Bar in Philadelphia.  And while he can give you advice about the issue, ultimately, it's your decision and not his.

Schwartz:  Yes, sir.

As discussed above, counsel had a valid strategic reason to advise Schwartz against taking the stand because Schwartz had a prior conviction for bank fraud and was facing another prosecution for similar conduct.  His testimony was likely to open the door to this Rule 404(b) evidence on cross-examination. Schwartz's credibility as a witness also would have been vulnerable to impeachment under Rule 609 of the Federal Rules of Evidence.  Accordingly, counsel did not provide ineffective assistance of counsel in connection with Schwartz's right to testify.

We next address Schwartz's assertion that counsel was ineffective for failing to move for a judgment of acquittal on certain grounds.  In support of this claim, Schwartz misstates the facts related to his conduct.  His repayment of the funds in issue is not a defense to fraud charges and therefore could not form the basis of a motion for a judgment of acquittal.  See Jimenez, 513 F.3d at 75.  Schwartz's assertion that counsel should have moved for a judgment of acquittal due to the government's failure to prove that the victim financial institutions were FDIC insured is also without merit.  The testimony of employees Garcia, Becker, and Fletcher that the financial institutions were FDIC insured at the time of trial was sufficient evidence to satisfy this element of the crimes charged.  See, e.g., United States v. Sliker, 751 F.2d 477, 484-85 (2d Cir. 1984).

Schwartz further argues that the government engaged in "outrageous misconduct" throughout his trial.  Related to this claim, Schwartz maintains that the government entered into a secret immunity agreement with government witness Ross, owner of PrePaid ATM.  In support, Schwartz has submitted the affidavit of Mark H. Schaffer, a licensed private investigator.  This affidavit states in part:

> Mr. Ross advised that he had been personally involved in the gambling industry, and feared that testimony he might provide would be used against him in some fashion.  As such, Mr. Ross engaged personal counsel.... Counsel for Mr. Ross then told Mr. Ross that as a result of counsel speaking with the

> prosecution, that they (the government)
> agreed and promised that they (the
> government) would not use anything that Mr.
> Ross said during testimony against him.

Failure to disclose such an agreement warrants reversal of a conviction "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Pflaumer, 774 F.2d 1224, 1226 (3d Cir. 1985) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).  Here, there was substantial evidence of Schwartz's guilt.  Ross's testimony was corroborated by the records introduced at trial and by other government witnesses, including Special Agent Verica, Cecelie Garcia, and Charles Becker.  Accordingly, we conclude that any failure of the government to disclose the alleged "secret immunity agreement" with Ross was harmless.

Cedrone, Schwartz's new counsel at sentencing, did not provide ineffective assistance of counsel.  Before sentencing, the government submitted to this court a sentencing memorandum recommending a sentencing range of two to eight months' imprisonment under the United States Sentencing Guidelines based on the jury's finding that the amount of intended loss was $0 and that Schwartz did not use sophisticated means.  The court then held a conference call with counsel regarding the effect of United States v. Booker on the Guideline calculation.  543 U.S. 220 (2005).  Based on Booker, the court could determine sentencing factors such as the amount of loss and use of

sophisticated means by a preponderance of the evidence and was
not bound by the jury's findings regarding these issues.  See
Jiminez, 513 F.3d at 88.  The government then submitted a revised
sentencing memorandum suggesting a Guidelines range of 18-24
months' imprisonment.

　　　　This sentencing range was appropriate under the
Guidelines based on the court's finding by a preponderance of the
evidence that Schwartz intended a loss of $16,914.14 and had used
sophisticated means.  His counsel challenged these findings in
both a sentencing memorandum and at the sentencing hearing.
Counsel was not constitutionally ineffective merely because his
arguments related to sentencing were unsuccessful.  The sentence
imposed was legally and procedurally proper and therefore counsel
was not ineffective for failing to object further.

　　　　Counsel also did not provide ineffective assistance of
counsel on appeal.  Where the decision to appeal a particular
issue is concerned, "[t]he test for prejudice under Strickland is
not whether petitioners would likely prevail upon remand, but
whether ... [the Court of Appeals] would have likely reversed and
ordered a remand had the issue been raised on direct appeal."
United States v. Mannino, 212 F.3d 835, 844 (3d Cir. 2000).  On
appeal, counsel argued that Schwartz's conviction should be
vacated because:  (1) the jury rendered inconsistent verdicts;
(2) the government failed to present sufficient evidence to
support the conviction; and (3) the government improperly used
immunized testimony obtained at the bail hearing.

-24-

Under Strickland, appellate counsel was entitled to make strategic choices regarding the issues presented on appeal and was not required to present every claim suggested by Schwartz.  The fact that Schwartz submitted his own pro se appellate brief, which the Court of Appeals considered and found to be "meritless," demonstrates that Schwartz was not prejudiced by his counsel's failure to raise the issues he now sets forth as "dead bang" winning arguments.

The remainder of Schwartz's claims are without merit.[4] Accordingly, the petition of Schwartz under § 2255 will be denied.[5]  A certificate of appealability will not issue.[6]

---

4.  Among these claims, Schwartz asserts that he is "actually innocent."  The Supreme Court has never recognized a claim of actual innocence as a freestanding ground for relief under § 2255.  See House v. Bell, 547 U.S. 518, 554-55 (2006); Herrera v. Collins, 506 U.S. 390, 400 (1993).  Regardless, Schwartz's claim relies on misstatements of law and fact.  Schwartz has failed to show that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  Schlup v. Delo, 513 U.S. 298, 329 (1995).

5.  In support of his petition, Schwartz and his mother have filed under seal several letters to this court.  We have considered these submissions and find that they do not affect our conclusion.

6.  Because the "motion and the files and records of the case conclusively show" that Schwartz is not entitled to relief, we will deny his request for an evidentiary hearing.  28 U.S.C. § 2255(b); see also Solis v. United States, 252 F.3d 289, 295 (3d Cir. 2001).